**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHIP WILLIAMS; ADELAIDA GALINDEZ; JUPITER RAMIREZ; and on behalf of all others similarly situated and on behalf of the general public,<br><br>                            Plaintiffs,<br><br>vs.<br><br>CENTERPLATE, INC., a Delaware corporation; CENTERPLATE OF DELAWARE, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>                            Defendants. | CONSOLIDATED CASE NO. 11-CV-2159 H-KSC<br><br>MEMBER CASE NO. 12-cv-0008-H-KSC<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT AND GRANTING FINAL APPROVAL OF CLASS SETTLEMENT; AND**<br><br>[Doc. No. 52]<br><br>**(2) GRANTING MOTION FOR ATTORNEYS' FEES COSTS, AND ENHANCEMENT AWARDS**<br><br>[Doc. No. 51] |

On May 24, 2013, Plaintiffs Chip Williams, Adelaida Galindez, and Jupiter Ramirez (collectively "Plaintiffs") filed a motion seeking final approval of a class action settlement and a motion for attorneys' fees, costs, and class representative enhancement awards. (Doc. Nos. 51, 52.) Defendants have not opposed Plaintiffs' motions, and no objections have been raised to the proposed class settlement. On August 26, 2013, the Court held a hearing on the matter. Marc Phelps and Raul Cadena

appeared for Plaintiffs. Scott J. Witlin appeared for Defendants. For the following reasons, the Court grants the motion for final approval of class action settlement, the motion for an award of fees and costs to class counsel, and the request for enhancement awards to Plaintiffs Chip Williams, Adelaida Galindez, and Jupiter Ramirez.

## **Background**

### I. Factual and Procedural Background

This is a wage and hour class action filed on behalf of all non-exempt employees or former employees of Centerplate, Inc., Centerplate of Delaware, Inc., and any subsidiaries or affiliated companies (collectively "Defendants") within California. (Doc. No. 27 ("Fourth Amend. Compl.") ¶ 1.) Defendants are hospitality service companies that provide concessions to sports stadiums, convention centers, and golf courses. (Id. ¶ 8.) Plaintiffs were employed by Defendants as non-exempt employees within the state of California. (Id. ¶¶ 5-7.)

Plaintiffs allege that Defendants did not provide class members with meal periods and rest breaks, or compensation in lieu thereof, as required by California wage and hour laws. (Fourth Amend. Compl. ¶¶ 2, 13-14.) Additionally, Plaintiffs allege that Defendants failed to compensate class members for total hours worked and for excess hours worked at overtime rates. (Id. ¶¶ 2, 15) Finally, Plaintiffs allege that Defendants required class members to purchase and maintain their uniforms and equipment as a condition of employment; failed to pay departing class members in accordance with California Labor Code §§ 201, 202, and 203; and did not maintain accurate records of class members' earned wages and work periods. (Id.) Plaintiffs seek damages, injunctive relief, attorneys' fees, and costs. (Id. ¶ 3.)

On May 9, 2011, Plaintiff Williams filed a class action complaint against Defendants in the Superior Court of the State of California. (Doc. No. 1-6.) On August 11, 2011, Williams filed an amended class action complaint against Defendants. (Doc. No. 1-7.) Defendants removed the Williams action on September 15, 2011. (Doc. No. 1.)

1    On November 22, 2011, Plaintiffs Galindez and Ramirez filed a class action complaint against Defendants in California Superior Court.  (Galindez v. Centerplate, Inc., No. 12-CV-0008 (S.D. Cal.) (Doc. No. 1-3).)  Defendants removed the Galindez and Ramirez action on January 3, 2012.  (Id. (Doc. No. 1).)  On February 23, the Court granted in part and denied in part Defendants' motion to dismiss and strike portions of the complaint.  (Id. (Doc. No. 23).)  On March 12, 2012, the Court denied Defendants' motion to remand.  (Id. (Doc. No. 26).)

On May 15, 2012, the Court granted the parties' joint motion to consolidate the two actions.  (Doc. No. 26.)  On May 16, 2012, Plaintiffs filed a fourth amended consolidated complaint ("complaint") asserting violations of the California Labor Code, wage orders of the Industrial Welfare Commission ("IWC"), and California's Unfair Competition Law ("UCL").  (Doc. No. 27, Fourth Amend. Compl.)  On June 15, 2013, Defendants filed an answer to the complaint.  (Doc. No. 28.)

During the discovery period, the parties exchanged written discovery, (Doc. No. 51-2, Declaration of Roger Carter ("Carter Decl.") ¶¶ 5-6), and briefed five motions to compel discovery.  (Doc. Nos. 29, 31, 34-36.)  In addition, Defendants took the deposition of each named Plaintiff; and Plaintiffs took a Rule 30(b)(6) deposition of the Defendants.  (Doc. No. 51-2, Carter Decl. ¶ 6.)

On August 30, 2012, the parties attended a full-day mediation before Mr. Joel Grossman, an independent mediator with extensive experience in wage and hour class actions.  (Id. ¶ 7.)  Following serious, informed, arms-length negotiation, the parties reached a settlement at the mediation.  (Id.)  On September 5, 2013, the parties notified the Court that they had reached a tentative settlement, (Doc. No. 42), and on December 28, 2013, Plaintiff filed a motion for preliminary approval of a class action settlement. (Doc. No. 46.)

## II.   The Settlement

Per the proposed settlement, Defendants have agreed to pay $650,000 to establish a settlement fund to settle the class members' claims.  (Doc. No. 46-2, Declaration of

Roger Carter Ex. A ("Proposed Settlement").) That amount includes all applicable payroll taxes to be computed by the settlement administrator. (Id. at 5.) The class members will receive payment from the settlement fund less administrative costs, Plaintiffs' incentive awards, required payments under the Private Attorney General Act ("PAGA"), and attorneys' fees and costs. (Id. at 3.) The parties agreed to a maximum attorney fee award of $195,000 plus actual out-of-pocket expenses not to exceed $20,000. (Id. at 2.) The parties currently estimate the net settlement proceeds to be $367,500. (Id. at 3.) Each class member will receive a share of the net settlement proceeds proportional to the wages earned from 2007 to the present while working for Defendants in non-exempt positions in California. (Id. at 6.) If the total payments to class members are less than forty percent of the net settlement proceeds, the portion of the remainder, up to forty percent, will be proportionately divided among the class members. (Id.) The unpaid balance will be retained by Defendants. (Id.) In exchange, the class members agree to release the claims that were or could have been asserted in this action against Defendants. (Id. at 1.)

### III. Preliminary Approval of the Settlement and Reaction of the Class Members

On January 25, 2013, the Court granted preliminary approval of the class settlement and ordered Plaintiffs to disseminate notice of the settlement to the class members. (Doc. No. 48.) On February 19, 2013, CPT Group, Inc. ("CPT"), the class action claims administrator for this case, mailed notice to the 9,394 class members. (Doc. No. 52-2, Declaration of Tim Cunningham ("Cunningham Decl.") ¶ 8.) The notice provided class members with the opportunity to file a claim for monetary relief, opt out of the settlement, or object to the settlement. (Id. ¶ 8, Exs. A-B.) The claims deadline was set for April 20, 2013. (Id.)

As of May 24, 2013, class members have submitted 2,247 responses to CPT, including 2,212 claim forms. (Doc. No. 52-2, Cunningham Decl. ¶ 12.) Based on the number of claims to date, approximately 63.49% of the Net Settlement Proceeds, or $239,363.14, will be paid to the class members who made claims. (Id. ¶ 19.) Twenty-

1 five (25) members have requested exclusion, and no class members have raised any
2 disputes or submitted any objections to CPT. (Id. ¶¶ 13-14.)

## Discussion

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Id.

## I.     Class Certification

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); see Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Id. In the present case, Plaintiffs seek to certify a class for purposes of settlement only. (Doc. No. 46-2, Proposed Settlement at 4.) As defined in the proposed settlement, the class includes "all current and former employees of Centerplate who worked in Covered Positions[1] in the State of California during the Covered Time Frame." (Id.)

On January 25, 2013, the Court preliminarily certified the proposed class. (Doc. No. 48 at 6.) The Court concluded that the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). (Id. at 4-5.) The Court also found that the proposed class satisfies the predominance and superiority requirements of Rule 23(b)(3). (Id. at 5-6.) Since that order, no party or class member has objected to certification of the settlement class. The Court has reviewed those elements again and adopts its prior analysis. Accordingly, because Plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3), the Court

---

[1] "Covered Positions" is defined as "all California non-exempt employees of Defendants." (Doc. No. 46-2, Proposed Settlement at 2.)

- 5 -

grants final certification of the proposed class for the purposes of settlement.

## II.   The Settlement

Federal Rule of Civil Procedure 23(e) requires the Court to determine whether a proposed class action settlement is "fair, adequate and reasonable," and not a product of collusion. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). To make this determination, the Court must consider a number of factors, including:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party–in this instance, an experienced independent mediator. See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

### A.   The Strength of Plaintiffs' Case, the Risk, Expense, and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial

Both parties have expended significant time, effort, and resources supporting their positions, and would continue to do so if the settlement failed to get final approval. (Doc. No. 52-1 at 8.) The disputed factual and legal issues would be complex and

costly to resolve at trial. (Id. at 10.) Both parties have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof for liability and damages, as well as the general difficulties and delays of litigation. (Id. at 7-8, 9-12.) These considerations led the parties to conclude that a timely settlement would be best for all involved parties. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement."). The Court agrees that the recovery through settlement confers a substantial benefit to the class that outweighs the potential recovery that could have been obtained through full litigation.

### 2. The Amount Offered in Settlement

In the present case, the proposed settlement provides class members with immediate monetary relief through a total common fund of $650,000. Based on the number of claims to date, $239,363.14, or 63.5% of the net settlement proceeds, will be paid to 2,212 members of the class. (Doc. No. 52-1 at 9; Doc. No. 52-2, Cunningham Decl. ¶ 19.) This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel. Accordingly, the Court finds the amount offered in settlement weighs in favor of granting final approval of the settlement.

### 3. The Extent of Discovery Completed and the Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The parties reached settlement fifteen months after the first complaint was filed and after extensive discovery and analysis of Plaintiffs' claims. (Compare Doc. No. 1-6 with Doc. No. 42; Doc. No. 51-2, Carter Decl. ¶¶ 5-6.) Defendants produced and

Plaintiffs' counsel reviewed, thousands of pages of documents, including documents discussing the duties and qualifications of each of the class positions at Defendants' venues, time and payroll records, and numerous policy related documents and handbooks. (Doc. No. 51-2, Carter Decl. ¶¶ 5-6.) Defendants took the depositions of the class representatives, and Plaintiffs took a 30(b)(6) deposition of the Defendants. (Id. ¶ 6.) Defendants also provided information regarding the size of the class, the average hourly rates for class members, and the number of facilities in California. (Id.) Class counsel was therefore able to negotiate the settlement based on a full evidentiary record and a thorough understanding of the strengths and weaknesses of the claims. Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh heavily in favor of granting final approval.

### 4. The Experience and Views of Counsel

Plaintiffs' counsel has extensive experience acting as class counsel in complex class action cases, including wage and hour class actions. (See Doc. No. 51-2, Carter Decl. ¶¶ 17-20; Doc. No. 51-3, Declaration of Scott Cooper ¶¶ 3-11; Doc. No. 51-4, Declaration of Marc Phelps ¶¶ 3-8; Doc. No. 51-5, Declaration of Raul Cadena ¶¶ 3-8, 12; Doc. No. 51-6, Declaration of Paul Jackson ¶¶ 1-5.) Accordingly, because counsel believes the present settlement is both fair and adequate, this also weighs in favor of granting final approval.

### 5. The Reaction of the Class Members to the Proposed Settlement

After dissemination of the notice packet to the 9,394 members, which provided each class member with the terms of the settlement and with an option to opt-out or file an objection, as of May 24, 2013, only twenty-five (25) class members have requested exclusion and no class member has filed an objection. (Doc. No. 52-2, Cunningham Decl. ¶¶ 8, 12-14, Exs. A-B.) The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement. See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy

of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had filed no opposition). Accordingly, the overall reaction of the class members weighs in favor of granting final approval.

### 6. Collusion Between the Parties

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Stanton, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The $5,000 incentive awards for Plaintiffs Chip Williams, Adelaida Galindez, and Jupiter Ramirez do not appear to be the result of collusion. The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation.'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Plaintiffs have protected the interests of the class by engaging in investigation and discovery, each attending a deposition, and assisting counsel with other aspects of the case. (Doc. No. 51-7, Declaration of Chip Williams ("Williams Decl.") ¶¶ 4, 13-18; Doc. No. 51-8, Declaration of Adelaida Galindez ("Galindez Decl.") ¶¶ 3-4, 9-10; Doc. No. 51-9, Declaration of Jupiter Ramirez ("Ramirez Decl.") ¶¶ 3-4, 9-10.) Therefore, the $5,000 enhancement award to Plaintiffs appears to be reasonable in light of their efforts in this litigation.

Finally, the attorneys' fees also do not appear to be the result of collusion. Plaintiff's counsel may simultaneously negotiate the merits of the action and their attorneys' fees. Stanton, 327 F.3d at 971. The attorneys' fees, litigation costs, and administration costs sought by Plaintiffs' counsel are reasonable under the

circumstances. As a result, the Court concludes that the settlement in this case is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959. Accordingly, the Court grants Plaintiffs' motion for final approval of the settlement.

### III.    Attorneys' Fees and Costs for Class Counsel

With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark" for common fund cases. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers v. Az. Citrus Growers, 904 F.2d 1301, 1311 (1990). Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). In this case, Plaintiffs seek $195,000 in attorneys' fees, 30% of the $650,000 common fund.[2] (Doc. No. 51-1 at 1.)

First, the results achieved in this case were very favorable. Class members are provided with immediate monetary relief, and the overall award is substantial. Second, the risks of litigation were real and substantial. Third, the complexity and potential

---

[2] The Court notes that approximately 63.5% of the net settlement proceeds has been claimed by the class. (Doc. No. 52-1 at 1; Doc. No. 52-2, Cunningham Decl. ¶ 19.) However, in determining the reasonableness of the requested attorneys' fees, the district court should calculate the fees as a percentage of the entire common fund, here $650,000, rather than the total funds claimed. See Williams v. MGM-Pathe Communs. Co., 129 F.3d 1026, 1027 (9th Cir. 1997) ("[T]he attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants."); Az. Citrus Growers, 904 F.2d at 1311 ("[A]ttorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members.").

- 10 -

1  duration of the case, coupled with the intensity of settlement negotiations, indicates that
2  a 30% award is reasonable.  Fourth, class counsel took this case on a contingent fee
3  basis, bearing the entire risk and costs of litigation.  (Doc. No. 51-1 at 8.)  Fifth, the
4  request for attorneys' fees in the amount of 30% of the common fund falls within the
5  range of acceptable attorneys' fees in Ninth Circuit.  See Vasquez v. Coast Valley
6  Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of
7  acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement
8  value, with 25% considered the benchmark"); Singer v. Becton Dickinson & Co., 2010
9  U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of
10  33.33% of the common fund for a wage and hour class action settlement "falls within
11  the typical range of 20% to 50% awarded in similar cases").  Finally, class counsel has
12  represented that the 30% figure is significantly less than the amount that would have
13  been calculated using the lodestar method.  (Doc. No. 51-1 at 9-14; Doc. No. 51-2,
14  Carter Decl. ¶ 30 & n.1.)  See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935,
15  944-45 (9th Cir. 2011) (encouraging district courts to cross-check their calculations
16  under the percentage-of-recovery method against the lodestar method).

17     For these reasons, the Court concludes that an award of attorneys' fees in the
18  amount of 30% of the common fund, or $195,000, and litigation costs in the amount of
19  $20,000,[3] are reasonable and warranted in this case.  Accordingly, the Court grants
20  Plaintiffs' request for attorneys' fees and costs.

21  **IV.   Enhancement Award for Class Representatives**
22     Finally, the $5,000 incentive awards for Plaintiffs Chip Williams, Adelaida
23  Galindez, and Jupiter Ramirez each, in total representing around 2.3% of the common
24  fund, also appear to be reasonable.  "The criteria courts may consider in determining

---

[3] Plaintiffs have represented to the Court that class counsel has incurred litigation costs in the amount of $22,587.29. (Doc. No. 51-1 at 14; Doc. No. 51-2, Carter Decl. ¶ 37.) Accordingly, the Court concludes that an award of $20,000 in litigation costs is reasonable. Similarly, Plaintiffs' request of $40,500 in costs for administering the settlement is reasonable in light of the fact that it is less than the $50,000 that was set aside by the settlement agreement for administration costs. (Doc. No. 46-2, Proposed Settlement at 7.)

- 11 -

whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted). Whether to grant an enhancement award to the named representatives is within the Court's discretion. See id.; In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000).

In the present case, the above factors weigh in favor of approving the enhancement awards requested. By initiating the present action, Plaintiffs have risked and continue to risk damage to their reputations and future employability in the field. (Doc. No. 51-7, Williams Decl. ¶¶ 19-20.) See Smith v. CRST Van Expedited, Inc., 2013 U.S. Dist. LEXIS 6049, at *16 (S.D. Cal. Jan. 14, 2013). In addition, Plaintiffs have protected the interests of the class by engaging in investigation and discovery, attending depositions, and assisting counsel with other aspects of the case. (Doc. No. 51-7, Williams Decl. ¶¶ 4, 13-18; Doc. No. 51-8, Galindez Decl. ¶¶ 3-4, 9-10; Doc. No. 51-9, Ramirez Decl. ¶¶ 3-4, 9-10.) Further, Plaintiffs are directly responsible for the monetary benefits conferred on the class by the settlement. The $5,000 incentive awards are also well within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech, Inc., 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000). Finally, no class members have objected to Plaintiffs' intent to each seek an enhancement award of $5,000. Accordingly, the Court finds the enhancement awards requested to be reasonable and grants Plaintiffs' motion for enhancement awards.

///

///

## **Conclusion**

For the reasons stated, it is hereby ordered:

1. The Settlement Agreement and the terms therein are fair, just, reasonable and adequate as to the settling parties, including the Settlement Class, and is hereby finally approved in all respects. The parties are hereby directed to perform the terms of the Settlement Agreement.

2. Solely for the purposes of effectuating the Settlement, the Court hereby certifies the Settlement Class, defined as all current and former non-exempt hourly employees of Centerplate who worked in the State of California at any time from May 9, 2007 through January 25, 2013 (the "Settlement Class" or "Class Members"). For the reasons stated in the Preliminary Approval Order, the Court finds that the Settlement Class meets the legal requirements for class certification under Federal Rule of Civil Procedure 23 ("Rule 23").

3. In accordance with Federal Rule of Civil Procedure 23 and the requirements of due process, the Settlement Class has been given proper and adequate notice of the Settlement Agreement and the Final Fairness Hearing, such notice having been carried out in accordance with the Preliminary Approval Order. The Notice and notice methodology implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order (a) were appropriate and reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (b) met all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law. The parties have complied fully with the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

4. The Court hereby approves the Settlement as set forth in the Settlement Agreement and finds that the Settlement is, in all respects, fair, adequate, and reasonable and is hereby finally approved in all respects. The Court makes this finding based on a weighing of the strength of Plaintiffs' claims and Defendants' defenses with the risk, expense, complexity, and duration of further litigation. The Court also finds that the Settlement is the result of non-collusive, arms-length negotiations between

experienced counsel representing the interests of the Settlement Class and Defendants, after thorough factual and legal investigation. In granting final approval of the Settlement, the Court considered the nature of the claims, the amounts and kinds of benefits paid in settlement, the allocation of settlement proceeds among the Class Members, and the fact that the Settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial. Additionally, the Court finds that the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual Class Member. The Court further finds that the response of the Class to the Settlement supports final approval of the Settlement. Specifically, no Class Member objects to the Settlement. Accordingly, pursuant to Rule 23(e), the Court finds that the terms of the Settlement are fair, reasonable, and adequate to the Class and to each Class Member. The Court also hereby finds that Plaintiffs have satisfied the standards and applicable requirements for final approval of this class action settlement under Rule 23.

5. The Motion for Final Approval is granted, and the Settlement Agreement hereby is approved as fair, reasonable, adequate to members of the Settlement Class, and in the public interest. The parties are directed to consummate the Settlement Agreement in accordance with its terms.

6. The Carter Law Firm, The Cooper Law Firm, P.C., The Phelps Law Group, Cadena Churchill LLP, and L/O of Paul Jackson (collectively referred to as "Class Counsel"), having conferred a benefit on absent Class Members and having expended efforts to secure compensation to the Class, are entitled to a fee, and accordingly, the Court approves the application by Class Counsel for attorneys' fees in the total amount of $195,000. This amount is payable as set forth in the Settlement Agreement.

7. The Court further approves Class Counsel's reasonable litigation costs in the amount of $20,000, to be paid as set forth in the Settlement Agreement.

8. The Court further approves a payment of $5,000 to each Class Representative–Chip Williams, Adelaida Galindez and Jupiter Ramirez–for the

1 initiation of this action, work performed, and risks undertaken in this matter.

2      9.   The Class Administrator, CPT Group, Inc., shall be paid $40,500 in accordance with the terms of the Settlement Agreement.

     10.  The Court hereby enters judgment approving the terms of the Settlement Agreement and ordering that the Lawsuit be dismissed on the merits with prejudice in accordance with the Settlement. The Complaint is dismissed on the merits with prejudice on a class-wide basis. This document shall constitute a final judgment for purposes of Federal Rule of Civil Procedure, Rule 58.

     11.  Without affecting the finality of the Judgment, the Court shall retain jurisdiction of this action for the purpose of resolving any disputes that may arise as to the implementation of the monetary relief terms of the Settlement Agreement.[4]

**IT IS SO ORDERED.**

DATED: August 26, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] The Court instructs the Clerk to file this order in both 11-cv-2159 and 12-cv-8.

- 15 -